**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MAYRA LOPEZ-APONTE,<br><br>    Plaintiff,<br><br>              v.<br><br>PUERTO RICO TELEPHONE CO,<br><br>    Defendant. | **Civil No. 13-1763 (SEC)** |

# OPINION AND ORDER

Before the Court is Defendant Puerto Rico Telephone Co.'s motion for summary judgment, Docket # 42, and Plaintiff Mayra Lopez-Aponte's response in opposition, Docket # 60. Defendant's motion is **granted**.

## I.    Factual and Procedural Background

Plaintiff's tenure at the Puerto Rico Telephone Company (PRTC) lasted for thirty-one years. She was discharged on September 3, 2010 because she never returned to work after taking sick leave for a whole year. At the time of termination, she was 49 years old and worked as a Banking Processes Supervisor.

Plaintiff alleges that in September 2012 she attempted to file an application for retirement benefits under PRTC's Retirement Plan for Salaried Employees (Retirement Plan) and PRTC's Lump Sum Retirement Plan (the Lump Sum Plan). But according to Plaintiff, an officer at PRTC's Benefits and Compensation Department refused to accept her application because the plans were being amended. She also says that she requested copies of the plans but that PRTC refused to provide them for the same reason. See Docket # 62-2.

A year later, Plaintiff filed a breach of contract claim in state court alleging that PRTC was trying to reduce her retirement benefits by 45%. She also brought a claim for

$11,341.72 in accrued vacation leave under the Puerto Rico Minimum Wage, Vacation and Sick Leave Act, Law 180 of July 27, 1998, P.R. Laws Ann. Tit. 29 § 250 et sec. (Law 180), and a Puerto Rico law claim for emotional damages stemming from PRTC's denial of the retirement benefits. Docket # 1-1, ¶¶ 8, 10 & 15.

PRTC timely removed the action arguing that the Retirement Plan and the Lump Sum Plan are covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA), thus providing this court with jurisdiction to entertain Plaintiff's claims for retirement benefits under these plans. After several proceedings, PRTC moved for summary judgment arguing that Plaintiff: (1) failed to exhaust administrative remedies; (2) is not yet entitled to receive the benefits under the plans as a matter of law; (3) is not entitled to payment for accrued vacation because she was an exempt employee; and (4) that her tort claim is pre-empted by ERISA. Docket # 42.

In response, Plaintiff filed an underdeveloped, poorly written, and confusing brief based mainly on PRTC's failure to respond to her discovery requests. See Docket # 60. For example, despite alleging in her complaint that she is entitled to pension benefits, which are provided by the Retirement Plan, she perplexingly argued that she was not a participant of that plan and thus, did not have to exhaust administrative remedies. In fact, she asserted that the Retirement Plan "under ERISA is a sham that does not exist or is not operational." Id., p. 4. Still, she correctly pointed out that the copy of the Retirement Plan that PRTC submitted in support of its motion was not the one in effect at the time of her termination because it contained amendments approved in December 2012, more than two years after she was discharged. For this reason, the Court denied the motion without prejudice and gave PRTC the opportunity to file the Retirement Plan in effect on the date of Plaintiff's discharge. PRTC obliged and Plaintiff filed a brief in opposition raising arguments she had not raised in her initial opposition to summary judgment.

Plaintiff now concedes that the Retirement Plan is subject to ERISA and instead argues that she did not have to exhaust administrative remedies because PRTC closed its doors to this avenue by failing to accept her application. Docket # 89, p. 3. She also posits that the Lump Sum Plan is not a "plan" within the meaning of ERISA.

## II.     Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir.1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the movant properly configures a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). So the nonmovant cannot rest on conclusory allegations and improbable inferences. Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Technologies GmbH, 781 F.3d 510, 516 (1st Cir. 2015). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary

judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

### III. Applicable Law and Analysis

Congress enacted ERISA "to protect employees from a 'patchwork scheme' of employee benefit regulations, and safeguard the financial integrity of employee benefit funds over the long term." Rodowicz v. Massachusetts Mut. Life Ins. Co., 192 F.3d 162, 170 (1st Cir. 1999), as amended (Nov. 3, 1999) (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12, 15–16 (1987)). Whether a plan is subject to ERISA depends on "the nature and extent of an employer's benefit obligations" under the plan. O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 267 (1st Cir. 2001). "If they require an ongoing administrative scheme that is subject to mismanagement, then they will more likely constitute an ERISA plan; but if the benefit obligations are merely a one-shot, take-it-or-leave-it incentive, they are less likely to be covered." Id. The crucial factor in determining if a plan is covered by ERISA is whether the employer intended "to provide benefits on a regular and long term basis." Rodowicz, 192 F.3d at 170, (parenthetically quoting Wickman v. Nw. Nat. Ins. Co., 908 F.2d 1077, 1083 (1st Cir. 1990)).

Plaintiff argues that the Lump Sum Plan is not covered by ERISA because it is a one-shot payment which she claims is easily calculated by using simple arithmetic. Docket # 89, p. 4. She grounds her argument on the First Circuit's decision in O'Connor, where the court held that a personnel reduction program, whose primary component was a severance bonus for employees who opted for early retirement, was not an ERISA plan. In so doing, the court considered, among other things, that the program provided a one-time lump sum payment, calculated by simple arithmetic and offered during a narrow (five-week) window of opportunity, to incentivize the voluntary resignation of their employees. 251 F.3d at 267-268. This type of plan, the court said, did not require the employer to "make a long-term financial commitment to any employee who chose

to participate." Id., quoting Rodowicz v. Mass. Mut. Life Ins. Co., 192 F.3d 162, 191 (1st Cir. 1999).

Plaintiff's attempt to equate her case to O'Connor fails. The Lump Sum Plan is not part of a program offered only during a narrow window designed to incentivize early retirement. And despite its name, it does not offer only a one-time payment to all retiring employees. Indeed, for employees like Plaintiff, who have had a long employment history with PRTC and whose benefits exceed $3,500, the general rule is that they receive "an actuarially equivalent single life annuity," or "an actuarially equivalent joint and 50% survivor annuity" if the employee is married. Docket # 45-5, pp. 16-17. The actuarial equivalent factors are based on the applicable interest rate and the applicable mortality table specified in 26 U.S.C. § 417(e)(3). Id., p. 28. Thus, for employees like Plaintiff, simple arithmetic is not enough to calculate the amount of benefits available under the Lump Sum Plan.

Furthermore, the Lump Sum Plan plainly establishes an ongoing administrative scheme. It lists an Administrator with fiduciary obligations, and provides a framework for filing claims and appeals, both of which factor in favor of ERISA coverage. See Rodowicz, 192 F.3d at 171-172. Under its terms, employees seeking their benefits must apply directly to the Plan Administrator and the benefits are paid from a trust fund established for that purpose, Docket # 45-5, pp. 6-7, 21; not from the company's general assets. Rosario-Cordero v. Crowley Towing & Transp. Co., 46 F.3d 120, 124 (1st Cir. 1995); compare with Gautier-Figueroa v. Bristol-Myers Squibb Puerto Rico, Inc., 845 F. Supp. 2d 444, 456 (D.P.R. 2012) (the practice of payments "originated from the Company's general assets…points to the Company's involvement—as opposed to the Plan Administrator—in the clerical task of administrating and paying such simple payments"); see also Belanger v. Wyman–Gordon Co., 71 F.3d 451, 454 (1st Cir. 1995) ("ERISA's substantive protections are intended to safeguard the financial integrity of employee benefit funds, to permit employee monitoring of earmarked assets, and to ensure that employers' promises are kept.").

**Civil No. 13-1763 (SEC)**                                                                 **Page 6**

Moreover, the Lump Sum Plan applies only to the employees that are participants in the Retirement Plan. Docket # 45-5, p. 8. In this sense, the Lump Sum Plan is best characterized as an added benefit to the Retirement Plan, which Plaintiff concedes is subject to ERISA.[1]

All of the above shows that the Lump Sum Plan forms part of a complex and ongoing administrative scheme. Since it has been active since 2001, it is also clear that PRTC intended to provide employee benefits on a regular and long-term basis, which is the crucial factor in determining whether an ERISA plan has been established. Wickman, 908 F.2d at 1083.

In her last attempt to excise the Lump Sum Plan from ERISA coverage, Plaintiff points to section 8.3 of the plan, entitled "Governing Law," which dictates that the plan's provisions "shall be construed and interpreted under the laws of the Commonwealth of Puerto Rico." Docket # 45-5, p. 26. Plaintiff argues, in essence, that the plan's choice of Puerto Rico interpretive law places it outside the scope of ERISA. But this argument goes nowhere fast. To start, Plaintiff puts forth no legal authority to support her argument. And, the authority that exists on this point suggests otherwise, as there is no "principle which prohibits parties from borrowing from state law" when drafting the terms of an ERISA plan. Harris v. The Epoch Grp., L.C., 357 F.3d 822, 825 (8th Cir. 2004). Indeed, any reference to state law that conflicts with ERISA would be void because parties may not broadly "contract to choose state law as the governing law of

---

[1] The calculation of benefits under the Retirement Plan is not a "mechanical, simple mathematical formula," based only on an employee's years of services. Cf. Gautier-Figueroa v. Bristol-Myers Squibb Puerto Rico, Inc., 845 F. Supp. 2d 444, 456 (D.P.R. 2012). The process of calculating the retirement income, see Docket # 73-1, pp. 26-35, is so complex that it requires an "Enrolled Actuary." id., p. 12.The following is an example of one of the methods used for calculating a participant's annual rate of retirement income:
> (i)Two percent (2%) of his Average Earnings multiplied by his Years of Service up to a maximum of twenty-five (25); plus (ii) one and one-half percent (1.5%) of his Average Earnings multiplied by his Years of Service in excess of twenty-five (25) up to a maximum of fifteen (15); minus the Covered Compensation Offset Factor multiplied by the product of his Average Offset Compensation not in excess of Covered Compensation and his Years of Service not in excess of thirty-five (35).

Id., p. 26.

an ERISA-governed benefit plan." Prudential Ins. Co. of Am. v. Doe, 140 F.3d 785, 791 (8th Cir. 1998). On the other hand, she also ignores the Lump Sum Plan's multiple references to ERISA, some of which appear in the articles governing the financing and administration of the plan. Docket # 45-5, pp. 18-19.

Moving on, the Court considers but ultimately bypasses Defendant's argument that Plaintiff's claims for benefits under the plans are barred because she did not follow the administrative procedures for claims and appeals prior to filing this action. Docket # 44, p. 10. Generally, a plaintiff must exhaust administrative remedies before filing an ERISA claim in Court. See Cruz v. Bristol-Myers Squibb Co., PR, 699 F.3d 563, 572 (1st Cir. 2012). Plaintiff, however, argues that she was not required to do so because PRTC refused to accept her application for retirement benefits, never provided her with a copy of the Retirement Plan, and did not make her aware of the procedures for bringing claims and appeals. Docket # 89, pp. 3, 8. PRTC does not dispute this.

In Madera v. Marsh USA, Inc., 426 F.3d 56, 62 (1st Cir. 2005), the First Circuit assumed an exception to the exhaustion requirement where an employer gives no written notice setting forth the specific reasons for denying a claim for benefits. The court, however, held that the assumed exception would not apply because the plaintiff had only inquired informally as to whether he would be eligible for severance benefits, but never filed any sort of formal claim. Id. On the other hand, in Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan, 497 F.3d 234 (2nd Cir. 2007) (Sotomayor, J.), the Second Circuit held that an employer was precluded from raising a "failure-to-exhaust defense" where the plan administrator had "refused to produce plan-related documents which the claimant had specifically and repeatedly requested." Id. at 246

Unlike Madera, Plaintiff attempted at least once to file a formal claim but PRTC refused to accept the application. Yet, contrary to Strong, Plaintiff does not argue that she made repeated efforts to file a formal application or obtain copies of the plan-related documents. Since PRTC made no effort to refute Plaintiff's argument on this front and

because Plaintiff, in turn, did nothing to dispute PRTC's argument that she was not yet entitled to receive her retirement benefits, the exhaustion issue is a wash. But on the merits, Plaintiff has no case.

The general rule under the Retirement Plan is that a participant begins to receive benefits when he or she reaches the Normal Retirement Age of 65. Docket # 73-1, p. 24. However, participants that fulfill at least one of two eligibility criteria have the option to start receiving benefits at an Early Retirement date. These are participants: (1) that are 55 years old with at least ten years of service, and (2) those whose age and years of service add up to 85 years or more. Id. The same follows for the Lump Sum Plan, which defines the Normal Retirement Age and the Early Retirement Age by reference to the Retirement Plan. Docket # 45-5, pp. 5-6. If a participant chooses early retirement, his or her benefits are reduced pursuant to some factors pre-established in the Plans. Id., pp. 11, 31; Docket # 73-1, pp. 29, 92-93.

Here, it is uncontested that Plaintiff was 49 years old when she allegedly attempted to submit her application for benefits. This is six years short of the first eligibility criterion for Early Retirement benefits. Adding her age to her 31 years of service yields 80 years, five years short under the second criterion. Even taking the date when she filed this action as the starting point, Plaintiff still falls short on both eligibility criteria. Thus, PRTC correctly argues that Plaintiff's claims for retirement benefits are premature.

Plaintiff makes no attempt to rebut PRTC's argument. Instead, she shifts gears and posits that summary judgment should be denied because PRTC never disclosed the Retirement Plan nor any of its amendments.[2] She relies on Agosto-Ramos v. Puerto Rico

---

[2] Plaintiff also makes much of the fact that PRTC failed to properly respond to her discovery requests. The Court agrees with Plaintiff that PRTC's objections to these requests were, to say the least, inappropriate, and perhaps even sanctionable. Particularly, those related to PRTC's defense that Plaintiff was an exempt employee and therefore not entitled to compensation for accumulated sick and vacation leave. See Docket # 61-3 (objecting to produce Plaintiff's job description and declining to state Plaintiff's duties and responsibilities). Still, this "did not call for heroic measures but, rather, for a routine motion to compel," Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc., 730 F.3d 23, 27 (1st Cir. 2013), which she did not file.

Tel. Co., 743 F. Supp. 2d 30 (D.P.R. 2010), where a court in this district initially denied summary judgment because the record supported an inference that the defendant (which was also PRTC) had failed to disclose an amendment to a Long Term Disability Plan. But Plaintiff conveniently omits that the same court later reversed course and granted the defendant's motion for summary judgment in its entirety. Id., on reconsideration, Civ. No. 08-1554 (JAG), 2011 WL 1750233 (D.P.R. 2011). In so doing, the Court stressed that the plaintiff had failed to shoulder his burden of proving significant harm stemming from the lack of notification and that PRTC was actively concealing the amendment. Id. at *3; see also Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 113 (1st Cir. 2002) ("'ERISA's notice requirements are not meant to create a system of strict liability for formal notice failures,' and a plaintiff must show prejudice in order to claim relief") (quoting Terry v. Bayer Corp., 145 F.3d 28, 39 (1st Cir. 1998)).

And so it is here. Plaintiff did not include a claim stemming from PRTC's failure to notify the Retirement Plan or its amendments in the complaint and she never sought the Court's leave to amend. It is in a post-summary judgment brief that Plaintiff first floated the idea that PRTC may be liable for failure to comply with ERISA's notification requirements. And not even then did she attempt to establish prejudice. "It simply will not do for a plaintiff to fail to plead with adequate specificity facts to support a…claim, all-the-while hoping to play that card if her initial hand is a dud." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 85 (1st Cir. 2008)(citing Fleming v. Lind–Waldock & Co., 922 F.2d 20, 24 (1st Cir.1990) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings")); see also Rios v. Municipality of Guaynabo, 938 F. Supp. 2d 235, 249 (D.P.R. 2013).

In short, because Plaintiff was not entitled to receive retirement benefits—neither when she made her initial request to PRTC nor later when she filed this action—her claims for benefits under both Plans are dismissed as premature. Her claim for alleged emotional damages under Puerto Rico law resulting from PRTC's denial of benefits is also dismissed; not only because she was not entitled to retirement benefits at the time

but also because it is preempted by ERISA. See Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997) ("the Supreme Court has construed [29 U.S.C § 1144(a)] to preclude state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights") (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52-57 (1987)).

Plaintiff is now 56 years old. Accordingly, she is now eligible to receive early retirement benefits. The Court notes, however, that the crux of Plaintiff's complaint is that PRTC is trying to penalize her with a 45% reduction in her retirement benefits. Plaintiff should be aware that, according to the plain language of the plans, choosing to receive benefits at an early retirement age may entail a reduction in the amount of benefits she will receive. If for some reason, this claim finds its way back to federal court, Plaintiff would do well in explaining the reasons behind her contention that the reduction in retirement benefits is contrary to the terms of the plans—something she failed to address throughout the whole litigation.

Finally, PRTC also moves to dismiss Plaintiff's claim for accrued vacation leave under the Puerto Rico Law 180. The Court declines to exercise supplemental jurisdiction over this claim and instead remands it to state court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988) ("when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court").

In deciding whether to exercise jurisdiction over state law claims, district courts must exercise "informed discretion," weighing "concerns of comity, judicial economy, convenience, and fairness." Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011). "[I]n the *usual* case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (2010) (italics in the original). Still, the "[t]he preferred approach is

pragmatic and case-specific." <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 257 (1st Cir. 1996). Retaining supplemental jurisdiction is favored where "the litigation ha[s] matured well beyond its nascent stages, discovery ha[s] closed, the summary judgment record [is] complete, the federal and state claims are interconnected, and powerful interests in both judicial economy and fairness tugged in favor of retaining jurisdiction." <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 257 (1st Cir. 1996).

In this case, although litigation has progressed significantly and discovery has closed, the federal and state law claims are not significantly related. Importantly, the summary judgment record, as it relates to Plaintiff's claim for liquidation of accrued vacation leave, is nearly empty. This claim turns on whether or not Plaintiff was deemed as an "administrator", "executive", or "professional," within the meaning of Law 180. P.R Laws Ann. tit. 29 § 250(b). That is, an employee who

> (1) earns a salary or compensation that is not less than $455.00 per week; (2) has as his/her primary duty the performance of office or non-manual work directly related to management policies or general business operation of the employer; and (3) such primary duty includes work requiring the exercise of discretion and independent judgment.

<u>González v. Spirit Airlines, Inc.</u>, 922 F. Supp. 2d 178, 184 (D.P.R. 2013).

Neither party presented competent evidence of Plaintiff's duties and responsibilities. On this issue, the summary judgment record reveals only Plaintiff's discovery requests, to which PRTC responded with improper objections. <u>See</u> <u>e.g.</u> Docket # 61-3 (objecting to produce Plaintiff's job description and declining to state Plaintiff's duties and responsibilities). Given these circumstances, the Court declines to exercise supplemental jurisdiction and instead remands Plaintiff's claim for vacation leave back to state court.

### IV. Conclusion

PRTC's motion for summary judgment is **granted**. Plaintiff's claims regarding the benefit plans and her tort claim for emotional damages are dismissed. Her claim for liquidation of accrued vacation leave is remanded to state court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2017.

>  *s/ Salvador E. Casellas*
>  SALVADOR E. CASELLAS
>  U.S. Senior District Judge